# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Property Maintenance Group,
    Plaintiff

vs

The Connor Group, A Real
Estate Investment Firm, LLC, et. al.,
    Defendants

Case No. C-1-08-265
(Hogan, M.J.)

## ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 88), Defendants, The Connor Group, A Real Estate Investment Firm, LLC's and Chesapeake Landing Apartment, LLC's Memorandum in Opposition to Plaintiff, Property Maintenance Group's Motion for Partial Summary Judgment (Doc. 94), and Plaintiff's Reply thereto (Doc. 99).

## BACKGROUND FACTS

Plaintiff brings this action to recover compensation which it alleges is due and owing to it for work performed as general contractor on various apartment complexes collectively owned by Defendant The Connor Group.

Plaintiff and Defendant The Connor Group ("TCG"). entered into a written contract for the Chesapeake Landing project on April 11, 2007. (Doc. 88, Affidavit of Joseph M. McCann, Ex. 1, PMG 0048-0057, 0222-0225). The contract specified that Plaintiff would provide painting work at the Chesapeake Landing apartment complex located in Dayton, Ohio. Defendant agreed to pay Plaintiff $101,640.00 for its work. The Contract also specified that, "the parties may, without affecting the validity of the Agreement, agree to changes in the Services, which shall be done only by way of an amendment to this agreement or 'change order' issued by Property Maintenance Group." (Doc. 88, McCann Aff., Ex. 1). The amount of compensation for this project was determined through Plaintiff's site visit to the Chesapeake Landing property. (*See* 2/4/09 Deposition of Joseph M. McCann, at 18-19; *see also* Doc. 88, McCann Aff., Ex. 1, Summary of Site Visit). According to Plaintiff's proposal, the quoted price included labor, materials, insurance and cleanup. (Doc. 88, McCann Aff., Ex. 1, PMG 0223; *see also* McCann Dep. at 39, 65).

Prior to the submission of Plaintiff's bid, Christopher Wohlpart, Plaintiff's representative, met with Mark Reese, the Director of Capital for The Connor Group, to discuss Defendant's expectations with respect to the work to be performed. During these discussions, Defendant contends that Mr. Wohlpart stated that Plaintiff would follow industry standards which included the removal and replacement of any rotten wood, removal and replacement of any cracked wood, and would not paint over wood that would not outlast the life-span of the paint. (Deposition of Mark Reese, Vol. 1, at 198-99).

Plaintiff began work at Chesapeake Landing in approximately May of 2007. At some point, it was determined that the scope of work should have also included removal and replacement of wood. Defendant requested that Plaintiff make the necessary repairs and replace the rotten wood. (Dorsey Dep. I., at 58, 70, 72). Plaintiff, therefore, provided additional wood for the project. Plaintiff now seeks compensation for the cost associated with the additional wood.

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886

F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff contends that it is undisputed that the replacement of wood was not included in the original scope of work and thus, Defendant is responsible for the cost associated with the additional work. Plaintiff argues that there is no factual dispute that Defendant requested that Plaintiff replace wood at Chesapeake Landing, that the original scope of work did not call for any wood replacement, that the wood replacement at Chesapeake Landing was over and above the original scope of work, and that Defendant was aware Plaintiff replaced the additional wood and agreed to pay Plaintiff for the additional wood it replaced at Chesapeake Landing over and above the original contract specifications. (*See* Reese Dep. I, at 53, 68, 69, 71; Wohlpart Dep., at 117-18; Dorsey Dep. I, at 106)

In contrast, Defendant argues that Plaintiff had not properly examined the property prior to submitting its bid. (*See* Reese Dep. I., at 199). Defendant claims that, after Defendant requested that rotten wood be replaced on the property, Plaintiff began painting buildings without replacing the rotten wood. (Id. at 48-49). Thus, Defendant argues that Plaintiff should be responsible for its own negligence and for the additional cost associated with the correction of such. Finally, Defendant contends that, because there is no written "change order," Plaintiff cannot demonstrate that a valid contract existed between the parties with respect to the amount Defendant agreed to pay Plaintiff for the additional wood. While Defendant concedes that Plaintiff "may be entitled to some compensation for some additional work which it performed at the Chesapeake Landing property," Defendant disputes the amounts claimed by Plaintiff for said work. The reasons stated by Defendant include: 1) that some of the wood set forth in the invoices was returned by Plaintiff; 2) material remained at the site when the work was completed; 3) Plaintiff sent duplicate invoices to Defendant; and 4) Defendant believes that not all of the wood allegedly purchased by Plaintiff was actually used at the Chesapeake Landing work site. (*See* Reese Dep. I., at 134-37, 144, 149, 156, 158; Reese Dep. II., at 29-30; Dorsey Dep. I., at 135-36). Finally, Defendant argues that Plaintiff has not provided undisputed evidence of the actual work performed nor that the work was performed in a "first class manner" as set forth in Section 1 of the Contract. (Doc. 88, McCann Aff., Ex. 1).

Initially, Plaintiff argues that there is no requirement that changes initiated by Defendant be made in writing. Section 1 of the Contract provides that,

> The parties may, without affecting the validity of the Agreement, agree to changes
> in the Services, which shall be done only by way of an amendment to this agreement

3

or "change order" issued by Property Maintenance Group. Contractor shall make no changes in the Services and shall not deviate from the requirements if [sic] this agreement without the prior written agreement by THE CONNOR GROUP, and Contractor shall not be entitled to compensation for any additional Services performed unless am [sic] amendment to this Agreement or Changes [sic] Order for such additional Services has been approved and signed by THE CONNOR GROUP prior to the performance thereof.

(Doc. 88, McCann Aff., Ex. 1, JMG0048-49). Plaintiff contends that it is only when Plaintiff seeks to make changes that a prior written agreement is required. While language requiring that change orders be made in writing is lacking with respect to amendments or change orders emanating from Defendant, we find that when read as a whole, the section contemplates just that. By requiring that amendments or change order be signed by Defendant before Plaintiff would be entitled to compensation for additional work, it is clear that said amendments or change orders must be in writing. Thus, we find Plaintiff's argument on this point unavailing.

It is undisputed that the Contract at issue is governed by Georgia law. Under Georgia law, "provisions of a building contract requiring a written change order before beginning work for which recovery is sought are valid and binding provisions." *Biltmore Construction Company, Inc. v. Tri-State Electrical Contractors, Inc.*, 224 S.E.2d 487, 506 (Ga. Ct. App. 1976)(citations omitted). However, as Plaintiff argues, courts will, nonetheless, look to the course of conduct or other evidence to imply a waiver of the requirement of a written change order when the owner requests additional work or is aware the contractor provided work which it contends was outside the scope of the original contract. *See Mion Brick Corp. v. Daniel Construction Co., Inc.*, 141 S.E.2d 808, 840 (Ga. Ct. App. 1965)(citations omitted). Upon a review of the evidence, we cannot say that the record, taken as a whole, indicates that a rational jury could only find in Plaintiff's favor. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Indeed, Georgia case law indicates that the determination as to whether a contractor can recover for additional work absent a written change order is a question for the jury. *See Biederbeck v. Marbut*, 670 S.E.2d 483, 487 (Ga. Ct. App. 2008); *Governor's Towne Club, Inc. v. Caffrey Construction Co.*, 614 S.E.2d 892, 893 (Ga. Ct. App. 2005); *Pro Metal Buildings Systems, Inc. v. T.E. Driskell Grading Co.*, 316 S.E.2d 574 (Ga. Ct. App. 1984); *Biltmore*, 224 S.E.2d at 489. Deposition testimony from both Patrick Dorsey and Mark Reese indicates a factual issue with respect to the timing of the request for the wood replacement. Plaintiff asserts that the request was made prior to work commencing and Defendant claims that the request was made after work commenced. (*See* Reese Dep. I., 48-49, 198-99; Dorsey Dep. I., at 58, 70, 72). Mr. Reese specifically testified that the replacement of wood rather than the painting of rotten wood or wood which would not outlast the life-span of the paint was discussed prior to entering in to the Contract with Plaintiff. (Reese Dep. I., at 198-99). Mr. Dorsey's testimony likewise mirrors this understanding that Plaintiff was responsible for incorporating the cost of the necessary materials into its bid for, and completion of, the Chesapeake project. (*See* Dorsey Dep. I., at 34-35, 46, 60). Indeed, the summary of the site visit includes such a provision. (*See* Doc. 88, McCann Aff., Ex.1, at PMG 0225). While it is clear that the replacement of wood at the Chesapeake property entailed

4

the purchase of extra material, it is not clear whether said replacement was contemplated by the original Contract or was outside the scope of the original Contract. Moreover, in viewing the course of conduct, we find that a factual issue exists as to whether Defendant was aware that Plaintiff was providing work which was outside the scope of the original Contract and whether such a course of conduct constituted an implied waiver of the written change order requirement.

Additionally, Defendant argues that, while Plaintiff "may be entitled to some compensation for some additional work which it performed at the Chesapeake Landing property," Defendant disputes the amounts claimed by Plaintiff for said work for a variety of reasons. Defendant claims that not all the wood purchased by Plaintiff was used at the Chesapeake property. While Plaintiff argues that Defendant has produced no evidence which supports its argument, Defendant's evidence in support of its argument is of the same nature as Plaintiff's evidence. Both have produced sworn testimony stating that on the one hand, all the lumbar purchased was used at the Chesapeake work site, and on the other hand, material was left at the site, and was also returned.. It is not this Court's role to weigh each side's evidence to determine the truth of the matter. Rather, such is the province of the jury.

Defendant further argues that Plaintiff breached the Contract by failing to perform the work in a "first class manner" as agreed. (*See* Doc. 88, McCann Aff., Ex. 1, at JMG0048). Defendant contends that Plaintiff failed to replace the appropriate amount of wood, failed to perform proper prep work, painted over bad wood and was generally sloppy. (Dorsey Dep. I, at 172-73, 222-23; Dorsey Dep. II at 29). As a result of Plaintiff's poor workmanship, Defendant contends that it was forced to hire other vendors to repair Plaintiff's work. (Dorsey Dep. I, at 173-75). As such, Defendant argues that Plaintiff is not entitled to the amount of compensation it seeks for the additional work performed. Plaintiff does not address this argument in its Reply memorandum and thus, we conclude that the issue remains a material factual issue for the trier of fact.

For the reasons stated above, we find that reasonable minds could differ with respect to whether Plaintiff is entitled to recover for the additional work performed on the Chesapeake Landing property. Accordingly, we find that summary judgment is inappropriate and Plaintiff's Motion for Partial Summary Judgment is, therefore, denied.

Furthermore, because we find that Plaintiff is not entitled to summary judgment on this issue, we do not reach the issue of prejudgment interest.[1]

---

[1] Pursuant to the parties' Final Pretrial Order, Defendant has withdrawn its counterclaims for fraud and misrepresentation. (Doc. 102). Thus, we do not reach the parties' arguments with respect to such in the present motion.

**IT IS THEREFORE ORDERED THAT**:

1) Plaintiff's Motion for Partial Summary Judgment (Doc.88) be DENIED.

SO ORDERED.

Date: 11/4/09

Timothy S. Hogan
United States Magistrate Judge

J:\LES\Other civil\Property Maintenance Grp\partialmsj.ord.wpd